**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

| | |
|---|---|
| VICTORIA MILLER, on behalf of herself and all others similarly situated, | Civil Action No.: 1:21cv326 TBM-RPM |
| Plaintiff, | |
| vs. | **CLASS ACTION PETITION** |
| KEESLER FEDERAL CREDIT UNION, | **JURY TRIAL DEMANDED** |
| Defendant. | |

**CLASS ACTION COMPLAINT**

Plaintiff Victoria Miller, on behalf of herself and all others similarly situated brings this class action complaint against Keesler Federal Credit Union, and alleges the following:

**INTRODUCTION**

1. This is a civil action seeking monetary damages, restitution and declaratory relief from Defendant, Keesler Federal Credit Union ("Keesler" or the "Credit Union"), arising from its improper overdraft fee ("OD Fees") practices.

2. Plaintiff challenges the assessment and collection of unnecessary and futile Overdraft Transfer Fees ("ODT Fees"). Keesler charges accountholders OD Fees for transactions which purportedly overdraw an account. Keesler purports to charge ODT Fees to transfer funds from an accountholder's savings account to his checking account when doing so is necessary to avoid an OD Fee on the checking account. However, Keesler makes such transfers, and assesses such ODT Fees, even when doing so does not avoid an OD Fee on a checking account, causing accountholders to pay <u>both</u> and ODT Fee and an OD Fees on a single transaction.

3. These practices breach contractual promises made in Keesler's adhesion contracts.

1

4. Keesler's customers have been injured by Keesler's improper practices to the tune of millions of dollars taken from their accounts in violation of their agreements with Keesler.

5. On behalf of herself and the Classes, Plaintiff seeks damages, restitution, and injunctive relief for Defendant's violations as set forth more fully below.

**PARTIES**

6. Plaintiff Victoria Miller is a resident of Harrison County, Mississippi, residing therein at 5450 Highway 90 Lot 2, Bay St. Louis, Mississippi 39520. Victoria Miller holds a Keesler checking account.

7. Defendant Keesler is a federal credit union headquartered in Biloxi, Harrison County, Mississippi and is engaged in the business of providing retail banking services to consumers, including Plaintiff and members of the putative Classes, which includes the issuance of debit cards for use by its customers in conjunction with their checking accounts. Keesler operates banking centers, and thus conducts business, throughout the States of Mississippi, and Louisiana, as well as in the United Kingdom.

8. Pursuant to Fed. R. Civ. P. 4(h)(1), Keesler may be served with process by delivering a summons and copy of this complaint to an officer, managing agent or general agent or upon an agent appointed to receive service or authorized by law to receive service. Keesler's international headquarters is located at 2602 Pass Road, Biloxi, Mississippi 39531-2728.

**JURISDICTION AND VENUE**

9. This Court has jurisdiction of this action under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because (1) the proposed class is comprised of at least 100 members; (2) proposed class members reside in at least Mississippi, Louisiana, and overseas, meaning at least one member of the proposed class

resides outside of Mississippi; and (3) the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs. This Court also has federal question jurisdiction Pursuant to 28 U.S.C. § 1331.

10. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Keesler is subject to personal jurisdiction here and regularly conducts business in this District, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

### A. Keesler's Account Documents

11. Plaintiff Miller has a Keesler checking account, which is governed by Keesler's standardized "Deposit Account Terms and Conditions" document ("Deposit Agreement").

12. The Overdraft Disclosure promises links authorization and covering of transactions at the moment of authorization; "available balance" is reduced for holds, including those placed immediately on debit card transactions; and that "non-sufficient funds items" are only those items that "overdraw[] your account":

> Overdraft Privilege is a discretionary service that protects you (up to an automatically assigned limit) when there is insufficient money in your checking account[.]
>
> […]
>
> **We may also authorize and cover ATM transfers or withdrawals and debit card** purchases if you have requested us to do so by opting in. **Please be aware that your available balance may be affected by merchant authorizations, which could create additional overdrafts and associated fees.**
>
> […]
>
> As long as your account is maintained in "good standing," **we may approve your overdraft items within your current available Overdraft Privilege limit as a courtesy to you**.

3

**B.     Keesler Charges ODT Fees on Futile Transfers**

13.     Keesler offers an overdraft protection and prevention service in which it transfers funds from other accounts held by accountholders to cover what would otherwise be overdraft transactions on a checking account. It charges a per-transfer fee of $2 for this service.

14.     The express purpose of the transfer service is to prevent overdraft transactions and reduce the incidence of $25 OD Fees.

15.     However, Keesler automatically performs these overdraft protection transfers, and charges a $2 fee for doing so, even where the transfer will be wholly futile—i.e., where the transfer will not actually allow the accountholder to avoid an OD Fee on his checking account.

16.     For example, on March 25, 2020, and April 15, 2020, Keesler made an automatic overdraft protection transfer from Plaintiff's savings account to his checking account and charged her a fee of $2 for doing so. But that transfer did nothing to accomplish its supposed purpose, to prevent an OD Fee, since the transfer was insufficient to fully cover the purported overdraft transaction. As such, Plaintiff still incurred an OD Fee of $25, in addition to the $2 overdraft protection fee on a transaction that settled to his account that day.

17.     Keesler's account documents deceive consumers regarding the fact that it may charge two separate fees—up to $27 total—for a single overdraft.

18.     The entire purpose of the overdraft transfer is to "cover an insufficient item." Yet the futile ODT Fees described above simply increase the total overdraft fees paid to $27 per transaction, not the $25 per transaction listed in the Fee Schedule.

19.     Moreover, it was bad faith and totally outside Plaintiff's reasonable expectations for Keesler to use its discretion to transfer funds from another account—and assess a fee for doing so—when that transfer had no preventative purpose.

4

## **CLASS ACTION ALLEGATIONS**

20. Plaintiff brings this action on behalf of herself and all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure. This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of Rule 23. The proposed classes are defined as:

21. Plaintiff brings this action on behalf of herself and on behalf of all others similarly situated. The Classes are defined as:

> All accountholders who, during the applicable statute of limitations, were charged an overdraft protection transfer fee for a transfer that did not prevent an overdraft.

> Plaintiff also brings her claims on behalf of subclasses of Mississippi accountholders in the event the Court declines to certify a nationwide class.

22. Excluded from the Classes are Defendant, Defendant's subsidiaries and affiliates, their officers, directors and member of their immediate families and any entity in which Defendant has a controlling interest, the legal representatives, heirs, successors or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

23. Plaintiff reserves the right to modify or amend the definition of the proposed Classes and/or to add a subclass(es), if necessary, before this Court determines whether certification is appropriate.

24. The questions here are ones of common or general interest such that there is a well-defined community of interest among the members of the Classes. These questions predominate over questions that may affect only individual class members because Keesler has acted on grounds generally applicable to the class. Such common legal or factual questions include, but are not limited to:

      a)     Whether Keesler improperly charged ODT Fees on futile transfers;

      b)     Whether the conduct enumerated above violates the contract;

      c)     Whether the conduct enumerated above violates the covenant of good faith and fair dealing;

      d)     Whether the conduct enumerated above constitutes unjust enrichment;

      e)     The appropriate measure of damages.

25. The parties are numerous such that joinder is impracticable. Upon information and belief, and subject to class discovery, the Classes consist of thousands of members or more, the identity of whom are within the exclusive knowledge of and can be ascertained only by resort to Keesler's records. Keesler has the administrative capability through its computer systems and other records to identify all members of the Classes, and such specific information is not otherwise available to Plaintiff.

26. It is impracticable to bring members of the Classes individual claims before the Court. Class treatment permits a large number of similarly situated persons or entities to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort, expense, or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender. The benefits of the class mechanism, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

27. Plaintiff's claims are typical of the claims of the other members of the Classes in that they arise out of the same wrongful business practices by Keesler, as described herein.

28. Plaintiff is a more than adequate representative of the Classes in that Plaintiff is a Keesler checking accountholder and has suffered damages as a result of Keesler's contract violations. In addition:

    a) Plaintiff is committed to the vigorous prosecution of this action on behalf of herself and all others similarly situated and has retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of accountholders against financial institutions;

    b) There is no conflict of interest between Plaintiff and the unnamed members of the Classes;

    c) Plaintiff anticipates no difficulty in the management of this litigation as a class action; and

    d) Plaintiff's legal counsel has the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

29. Plaintiff knows of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

30. Keesler has acted or refused to act on grounds generally applicable to the class, thereby making appropriate corresponding declaratory relief with respect to the Classes as a whole.

31. All conditions precedent to bringing this action have been satisfied and/or waived.

**COUNT ONE**
**BREACH OF CONTRACT INCLUDING THE**
**COVENANT OF GOOD FAITH AND FAIR DEALING**
**(Individually and on Behalf of the Classes)**

32. Plaintiff repeats and incorporates all of the preceding allegations as if fully set forth herein.

33. Plaintiff, and all members of the proposed Classes contracted with Keesler for checking account services, including debit card services.

34. Keesler breached promises made to Plaintiff and all members of the proposed classes when as described herein, Keesler charged fees for futile OD transfers.

35. In addition, there exists an implied covenant of good faith and fair dealing in all contracts that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit – not merely the letter – of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

36. Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Examples of bad faith are evasion of the spirit of the bargain, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

37. The implied covenant of good faith and fair dealing applies to the performance and enforcement of contracts, limits the parties' conduct when their contract defers decision on a particular term, omits terms, or provides ambiguous terms.

38. Keesler has breached the covenant of good faith and fair dealing and abused its discretion in its contract as described herein. Specifically, Keesler should not have used its discretion to charge OD Fees on futile OD transfers.

39. Plaintiff and all members of the proposed Classes have performed all, or substantially all, of the obligations imposed on them under the contract.

40. Plaintiff and all members of the proposed Classes have sustained damages as a result of Keesler's breaches of the contract.

## COUNT TWO
## UNJUST ENRICHMENT
## (In the Alternative to COUNT ONE)
## (On Behalf of Plaintiff and the Classes)

41. Plaintiff repeats and incorporates all of the preceding allegations as if fully set forth herein.

42. To the detriment of Plaintiff and the Classes, Defendant has been, and continues to be, unjustly enriched as a result of their wrongful conduct alleged herein.

43. Plaintiff and the Classes conferred a benefit on Defendant when they paid Defendant the fees that were not disclosed or allowed for in the in the Customer Account Agreement.

44. Defendant unfairly, deceptively, unjustly and/or unlawfully accepted said benefits, which under the circumstances, would be unjust to allow Defendant to retain.

45. Plaintiff and the Classes, therefore, seek disgorgement of all wrongfully obtained fees received by Defendant as a result of its inequitable conduct as more fully stated herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Classes, demands a jury trial on all claims so triable and judgment as follows:

A. Certification for this matter to proceed as a class action on behalf of the Classes;

B. Declaring Keesler's OD Fee policies and practices to be in breach of its contract with accountholders;

C. Restitution of all OD Fees and improperly assessed paid to Keesler by Plaintiff and the members of the Classes, as a result of the wrongs alleged herein in an amount to be determined at trial;

D. Actual damages in an amount according to proof;

E.      Pre-judgment and post-judgment interest at the maximum rate permitted by applicable law;

F.      For costs and attorneys' fees under the common fund doctrine, and all other applicable law; and

G.      Such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff and all others similarly situated hereby demand trial by jury on all issues in this Class Action Complaint that are so triable.

Dated: October 20, 2021

Respectfully submitted,

By: */s/ Christopher J. Weldy*
**WELDY LAW FIRM PLLC**
Christopher J. Weldy, Esq.
1438 N State St.
Jackson, MS 39202
Telephone: (601) 624-7460
Email: chris@weldylawfirm.com
*Attorney for Plaintiff and the Putative Classes*